**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **RANDSTAD TECHNOLOGIES, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WALKER FENCI and ETTAIN GROUP,**<br><br>**Defendants.** | ) | **Civil Action**<br>**File No. ________** |

**COMPLAINT**

COMES NOW Plaintiff Randstad Technologies, LLC ("Randstad"), by and through its attorneys, and brings this Complaint against Defendants Walker Fenci ("Fenci") and the Ettain Group ("Ettain"). Fenci is Randstad's former Regional Managing Director for the Texas Region. Ettain is a direct competitor of Randstad and Fenci's new employer. For its causes of action, Randstad states as follows:

**SUMMARY OF THE CASE**

Randstad is a leading provider of IT staffing and recruitment, providing project, project to direct hire, and direct hire services to start-ups, emerging growth and Fortune 500 companies. Randstad hired Fenci on November 17, 1997. At the time of his resignation from Randstad on December 16, 2016, Fenci was Randstad's Regional Managing Director for its Texas Region. In this position, Fenci had extensive access to Randstad's confidential information and trade

secrets, and he was directly involved in helping members of his team and the national strategic accounts team manage key Randstad accounts, including several national accounts.

On June 25, 2015, Fenci executed an Employee Non-Competition and Confidentiality Agreement ("the Agreement") with Randstad. The Agreement provided, among other things, that he would not, for a twelve-month period following his termination, compete with Randstad in the same territory where he worked for Randstad. On December 19, 2016, Fenci sent an email to members of Randstad's Texas and Central Regional Leadership team announcing his resignation from Randstad to "start another opportunity." The "opportunity" he was "starting" was with Ettain, Randstad's direct competitor in the staffing market, for which he was going to perform the same services that he had performed for Randstad, including oversight of national strategic accounts and solicitation of the same or similar customers. What is more, Fenci is currently overseeing Ettain's Frisco and Dallas offices, managing the same markets he managed while at Randstad. Consequently, Fenci is in direct violation of his non-competition agreement, and he is currently working for Ettain in a position where he can do substantial harm to Randstad.

Randstad seeks to enjoin Fenci from working for Ettain, Randstad's direct competitor, for the next 12 months in any region where he worked for Randstad

because he is in violation of the reasonable, narrowly-tailored one-year non-competition covenant set forth in the Agreement. If Fenci is allowed to continue to breach his Agreement, he will capitalize on the goodwill Randstad fostered with its customers through his relationships during his employment at Randstad. Indeed, Fenci has already inadvertently disclosed to Randstad that he is seeking to establish a business development team to target specifically a key Randstad client that generates millions of dollars for Randstad. Furthermore, Fenci will inevitably use or disclose Randstad's confidential information and trade secrets to the detriment of Randstad and to the benefit of Ettain.

Because of Ettain's tortious interference and Fenci's violations of his agreement, Randstad also seeks to enjoin Fenci and Ettain from misappropriating, disclosing, or using any of Randstad's trade secrets and confidential information and to order the immediate return of all Randstad property, documents, confidential information and trade secrets, if any, in their possession, custody or control. Furthermore, in light of Ettain's pattern of interfering with the restrictive covenants intended to protect Randstad's legitimate business interests, including soliciting and/or hiring other Randstad employees before and after Fenci, Randstad seeks to enjoin Fenci and Ettain from interfering with Randstad's advantageous contractual and employment relationships. Finally, Randstad seeks to enjoin Fenci

and Ettain from directly or indirectly soliciting the customers with whom Fenci had material contact during his employment with Randstad.

## PARTIES

1. Randstad is a Delaware company with its corporate headquarters and principal place of business located in Atlanta, Georgia, in Cobb County. Randstad is a provider of IT staffing and recruitment services, providing projects, project to direct hire and direct hire services, and other talent solutions.

2. Ettain is a North Carolina corporation with its principal place of business located in Charlotte, North Carolina. Ettain conducts business nationwide, including in Georgia and Texas.

3. Ettain is a direct competitor of Randstad. Like Randstad, Ettain is a provider of IT staffing and recruitment services, which are the same or substantially similar to the types of services offered by Randstad.

4. Defendant Fenci is a resident of Frisco, Texas. He was employed by Randstad from November 17, 1997 through December 30, 2016.

## JURISDICTION AND VENUE

5. This Court has personal jurisdiction over Fenci pursuant to O.C.G.A. § 9-10-91 and because Randstad seeks injunctive relief and damages arising from Fenci's breach of his Agreement with Randstad. Fenci contractually agreed that the state and federal courts of Georgia have exclusive jurisdiction over any claims

arising out of the Agreement. As shown in Exhibit A, Section 12 of his Agreement, the parties state in full:

> 12. **<u>Governing Law and Selection Forum</u>**. The Agreement and the rights and obligations of the parties hereunder shall be construed and enforced in accordance with, and all questions concerning the construction, validity, interpretation and performance of this Agreement shall be governed by, the laws of the state of Georgia, without giving effect to provisions thereof regarding conflict of laws. Any claims arising out of or related to the covenants in Sections 3, 4, 5, and 6 of this Agreement, all claims arising under applicable law governing trade secrets, and all claims for emergency injunctive relief, must be litigated exclusively in the Superior or State Courts of Cobb County, Georgia, provided, however, that any such claim or cause of action may be brought in, or removed to, the United States District Court for the Northern District of Georgia, Atlanta Division, to the extent that such court would have jurisdiction over the subject matter of such action. The Employee and the Company waive any objection based on personal jurisdiction and forum non conveniens and waive any objection to venue of any action instituted hereunder to the extent that an action is brought in the courts identified above. Each party agrees that a final judgment in any such action shall be conclusive and may be enforced in any other jurisdiction in any manner provided by law.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 and Fenci's written consent to jurisdiction in Georgia courts, because complete diversity exists between the parties, and because Randstad is seeking damages in excess of $75,000.

7. Venue is proper in this Court because of Fenci's written consent to venue. Additionally, Randstad's headquarters are located in Cobb County,

Georgia, and Fenci's contract breaches have caused and will cause injury to Randstad in Georgia.

## STATEMENT OF FACTS

### I. RANDSTAD'S BUSINESS

8. Randstad hereby repeats, re-alleges and incorporates by reference the allegations contained in the proceeding paragraphs as if fully set forth herein.

9. To maintain and grow its position within the staffing market, Randstad spends millions of dollars annually in marketing and advertising to prospective and current customers, as well as other business development efforts.

10. Randstad services a variety of customers and/or clients that have technical and professional staffing and business solution needs.

11. During his employment with Randstad as a Regional Managing Director, Fenci was primarily responsible for overseeing Randstad's Texas Region, including offices in Frisco, Dallas, Austin, Houston and San Antonio. These offices serviced a variety of clients – ranging from local retail businesses, mid-market businesses, and national strategic accounts.

12. Fenci was responsible for managing a team of more than sixty (60) employees, consisting of management employees, sales employees, administrative employees, and recruiters.

## II. RANDSTAD'S CONFIDENTIAL AND PROPRIETARY INFORMATION AND METHODS USED TO PROTECT THAT INFORMATION

13. Randstad has invested substantial time and money gathering and developing trade secrets and confidential and proprietary information concerning its markets, services, clients, products, solutions, HR technologies, market research, and customer relations.

14. While employed by Randstad, Fenci had day-to-day contact with Randstad's customers, as well as day-to-day contact with Randstad's confidential and proprietary information.

15. Among other things, Fenci was privy to information relating to specific client needs, company strategies, company-wide financials, regional financials, pricing, billings, margins, customer initiatives, allocation of resources, and business and marketing strategies being utilized by Randstad, which, if used would give Fenci and Ettain an unfair advantage in the staffing market.

16. Additionally, Fenci had direct access to internal systems such as MyConnect, Bullhorn and Salesforce. These systems would allow for researching and pulling up data related to, among other things, enterprise reporting, company financials, reporting, and client information.

17. Fenci also received and had access to financial reports that were distributed to senior management and contained Randstad Technologies' overall financials.

18. Fenci attended and participated in strategic and senior management-level meetings for his region, as well as the Central Region overall meetings.

19. Randstad's trade secrets and confidential and proprietary information are not generally known in the industry and are valuable because Randstad derives economic value from the information, in part because such information is not publicly available.

20. Randstad requires that its confidential information be kept strictly confidential by its employees and restricts access to this information. Randstad takes specific measures to preserve the confidentiality of this information, including but not limited to, the following:

a. Randstad requires that certain employees who have access to confidential information sign Agreements containing covenants designed to maintain such confidentiality and to return Randstad property upon termination of employment;

b. Randstad requires its employees to maintain confidentiality of Randstad information and protect Randstad's assets, as articulated in both Randstad's employment agreement, Associate Handbook and a memorandum to employees concerning confidentiality and protection of Randstad's trade secrets.

c. Randstad requires that employees who have access to confidential information and trade secrets sign non-compete agreements containing covenants designed to maintain the confidentiality of its trade secrets and protect its position in the marketplace;

d. Randstad restricts access to its computerized information through the use of passwords, encryption of its computers, and tracking of the use of portable storage devices; and

e. Randstad restricts access to its company information based on each individual employee's "need to know" the particular information.

21. Randstad rigorously maintains the confidentiality of its information because the information provides Randstad a competitive advantage in the marketplace from which Randstad derives economic value.

22. Randstad's trade secrets and confidential and proprietary information are of great value to Randstad and would give any competitor of Randstad – including Fenci and his new employer, Ettain – an unfair competitive advantage. Such information would give any competitor who improperly acquired such information an unfair competitive advantage without having to expend the time and resources to develop the trade secret and confidential and proprietary information as Randstad has done.

23. As a result of his positions at Randstad, Fenci received and had access to extensive trade secrets and confidential and proprietary information of the type described herein.

## III. Fenci's Obligations Owed to Randstad

24. On June 25, 2015, as a condition of and as consideration for Fenci's continued employment, Fenci signed the Agreement. (*See* Exhibit A).

25. The Agreement was designed to protect Fenci's and Randstad's interests in the employment relationship, and to protect Randstad's legitimate business interest in its confidential and proprietary information and business relationships. Within the Agreement, Fenci acknowledged that throughout his employment with Randstad, he would receive confidential information and trade secrets.

26. The Agreement provides as follows:

> **3. Entrustment and Preservation of Confidential Information and Trade Secrets.**
>
> (a) The Employee acknowledges that Confidential Information and Trade Secrets are valuable, special and unique assets of the Company's business. In the course of Employee's employment with the Company, the Company will disclose to Employee and grant Employee access to Confidential Information and Trade Secrets, and Employee desires to be, and will be, entrusted with such Confidential Information and Trade Secrets during employment by the Company. In consideration of the Company's entrusting to the Employee certain of its Confidential Information and Trade Secrets, the Employee shall not directly or indirectly reproduce, use, distribute, disclose,

> publish, or misappropriate any Confidential Information or Trade Secrets on behalf of Employee or any person or entity other than the Company for any purpose whatsoever (i) at any time during Employee's employment with the Company, and (ii) after Employee's separation from employment with the Company (for any reason) for so long as the information in question meets the definition of Confidential Information set forth in Section 2(b), up to a maximum of two (2) years from the date of such separation of employment; provided that as to any Confidential Information that constitutes a Trade Secret under applicable law, these restrictions shall apply for so long as the information remains a Trade Secret. The Employee acknowledges that any such prohibited use or disclosure of Confidential Information or Trade Secrets is likely to cause irreparable harm and financial loss to the Company.

(Exhibit A, ¶ 3(a)).

27. The Agreement defines "Confidential Information" as:

> "data and information belonging to the Company (i) relating to the Business of the Company, (ii) which has been disclosed to the Employee or of which the Employee became aware as a consequence of or through Employee's relationship with the Company, (iii) which has value to the Company, and (iv) which is not generally known to the public or the Company's competitors. Without limiting the generality of the foregoing, "Confidential Information" includes the Company's proprietary processes and methods of operation, pricing, margin and mark-up information, strategic plans, training techniques and manuals, recruitment and placement strategies and targets, financial data and projections, sales and marketing information, personnel information, information concerning Placement Candidates and Talent (such as employment preferences, salary requirements/history, contact information, availability, customer feedback and interpersonal skills), and information concerning actual or prospective customers (such as hiring preferences, staffing needs, hiring manager contact information, pricing and job orders)."

(Exhibit A, ¶ 2(b)).

28. Fenci further agreed that:

> (a) During Employee's employment with the Company and the twelve (12) month period immediately following the date of Employee's separation of Employment with the Company, regardless of the reason for such separation, Employee shall not, directly or indirectly, on Employee's own behalf or on behalf of any person or entity other than the Company:
>
> > (i) contact, solicit, service, sell to, or attempt to contact, solicit, service, or sell to any customer of the Company with whom Employee had Material Contact at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company for the purpose of providing services competitive with the Business of the Company;
>
> ***
>
> (d) During Employee's employment with the Company and the twelve (12) month period immediately following the date of Employee's separation of employment with the Company, regardless of the reason for such separation, Employee shall not, within the Restricted Territory, directly or indirectly, on Employee's own behalf or on behalf of any person or entity other than the Company, hold any position as an employee, agent, contractor, or otherwise, for or with any person or entity which engages in activities competitive with the Business of the Company if such position Involves:
>
> > (i) providing products or services competitive with the Business of the Company;
> >
> > (ii) supervising employees or other personnel who provide products or services competitive with the Business of the Company;

(iii) developing or implementing strategies or methodologies related to products or services competitive with the Business of the Company; or

(iv) engaging in responsibilities in which Employee would utilize or disclose Confidential Information.

(Exhibit A, ¶ 4(d)).

29. The Agreement defines "Restricted Territory" as:

(i) a radius of twenty-five (25) miles of any office(s) to which Employee was assigned or which Employee managed, during the twelve (12) months prior to the date of Employee's separation of employment with the Company;

(ii) a radius of twenty-five (25) miles of any office(s) in which Employee performed services on behalf of the Company at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company;

(iii) a radius of twenty-five (25) miles of any office(s) in which the Company employed personnel whom Employee directly or indirectly supervised or managed during the twelve (12) months prior to the date of Employee's separation of employment with the Company; and

(iv) any region or territory to which Employee was actually assigned or which Employee managed during the twelve (12) months prior to the date of Employee's separation of employment with the Company;

(Exhibit A, ¶ 2(f)).

30. Fenci further agreed that:

**8. <u>Enforcement and Damages.</u>**

The Employee acknowledges that the Company will suffer irreparable injury and damage and cannot be reasonably or adequately compensated in monetary damages alone for the loss by the Company

> of its benefits or rights under this Agreement as the result of a breach, default or violation by the Employee of any of his or her obligations under this Agreement. Accordingly, the Company shall be entitled, in addition to all other remedies which may be available to it (including monetary damages), to injunctive and other available equitable relief in any court of competent jurisdiction in Cobb County, Georgia to prevent or otherwise restrain or terminate any actual or threatened breach, default or violation by the Employee of any provision of this Agreement or to enforce any such provision. The Company will not be required to post any bond as a condition of the Company receiving such injunctive relief, and the Employee hereby specifically waives the right to request or require the posting of a bond as a condition of the Company receiving injunctive relief. ***The Employee shall reimburse the Company for all reasonable legal fees and costs incurred by the Company in connection with bringing a successful action to enforce this Agreement.***

(Exhibit A, ¶ 8) (emphasis added).

31. The Agreement is governed solely by the laws of the State of Georgia. (Exhibit A, ¶ 12).

## IV. FENCI'S RESIGNATION AND SUBSEQUENT EMPLOYMENT BY ETTAIN

32. On December 19, 2016, Fenci sent an email to the Texas and Central Regional Leadership team announcing his resignation from Randstad.

33. In his December 19 email, Fenci stated that he was starting "another opportunity on 1/9."

34. Randstad has also learned that Fenci has accepted employment with Ettain, Randstad's direct competitor.

35. In his new role with Ettain, upon information and belief, Fenci is performing the same or similar job duties that he performed for Randstad in the same territory for which he had responsibility while employed at Randstad.

36. Randstad has since learned that Fenci began drafting his resignation communication on December 14, 2016. Randstad also has learned that between December 13 and December 14, 2016, Fenci accessed several Randstad documents that contained Randstad's confidential information and trade secrets.

37. Prior to offering Fenci a job, and continuing since his hire, Ettain has been made aware and has knowledge that Fenci was and remains bound by a non-compete agreement with Randstad which prohibited Fenci from performing the duties and responsibilities he would be required to perform for Ettain. Given his intention to resign, there was no legitimate business need for Fenci to access these documents when he did.

38. Fenci's acceptance of a position of employment with Ettain, which entails substantially similar duties as his positions with Randstad, is a serious threat to Randstad's business, is in violation of Fenci's contractual obligations and applicable law, and unjustly enriches Fenci and Ettain.

39. Fenci's actions in searching confidential business documents on the days leading up to his resignation and his other actions since, including his clear intention to pursue a key Randstad client for the benefit of Ettain raises concerns

that Fenci is soliciting or preparing to solicit Randstad's client in violation of his Agreement.

40. Fenci has intimate knowledge of and had access to Randstad's proprietary and confidential information, particularly related to several key Randstad strategic accounts, and Fenci will inevitably use and disclose this information to Ettain, Randstad's direct competitor in the staffing market.

41. By hiring Fenci, Ettain will gain instant advantage and value from Fenci's extensive and proprietary knowledge of Randstad's trade secrets and confidential information, which will allow it to divert business from Randstad. Furthermore, Fenci had access to confidential and proprietary information regarding Randstad's competitive strategies against Ettain, which he can use to the advantage of Ettain and detriment of Randstad.

42. Randstad has no adequate remedy at law to fully protect it from Fenci's and Ettain's actions. If their actions go unchecked, they will, among other things, diminish the value of Randstad's trade secret and confidential and proprietary information, diminish Randstad's goodwill, negatively impact customer relationships, negatively impact Randstad's relations with key contacts, and unjustly provide Ettain with unfair competitive advantages.

## COUNT I
## BREACH OF CONTRACT: NON-COMPETITION
## (Fenci)

43. Randstad hereby repeats, re-alleges and incorporates by reference the allegations contained in the proceeding paragraphs as if fully set forth herein.

44. The restrictions contained in the Agreement are reasonably necessary to protect the legitimate business interests identified herein.

45. Among other things, the non-competition covenant in the Agreement prohibits Fenci from working for a competing business in the Restricted Territory.

46. The non-competition clause is in effect for one year after Fenci's termination of employment.

47. Randstad may enforce the post-employment non-competition clause of the Agreement against Fenci pursuant to O.C.G.A. § 13-8-53(a)-(b).

48. Randstad has satisfied all of its contractual obligations to Fenci, if any.

49. Fenci knowingly, intentionally, and materially breached the terms of the non-competition clause by going to work for a competitor of Randstad in the Restricted Territory.

50. Randstad has been and continues to be damaged by Fenci's improper and unlawful actions in breaching the Agreement.

51. As a direct and proximate result of Fenci's breach, Randstad has suffered damages, irreparable harm, and other damage ancillary to the aforementioned breaches.

52. Accordingly, Randstad is entitled to an injunction restraining Fenci, and all others acting in concert with him, including but not limited to Ettain, from engaging in activities that violate the contractual obligations undertaken by Fenci in the Agreement.

53. Randstad is also entitled to an award of damages incurred as a result of Fenci's material breaches of his contractual obligations under the Agreement, in an amount to be determined at trial.

**COUNT II**
**TORTIOUS INTERFERENCE WITH CONTRACT, BUSINESS RELATIONSHIPS AND EXPECTANCIES**
**(Ettain)**

54. Randstad hereby repeats, re-alleges and incorporates by reference the allegations contained in the proceeding paragraphs as if fully set forth herein.

55. Fenci's Agreement is a valid and enforceable contract. The post-employment covenants and other provisions contained in the Agreement are reasonable in scope and duration and are reasonably necessary to protect legitimate, protectable interests in the goodwill, long-term customer relationships, and proprietary business and customer information of Randstad.

56. Ettain knew, or should have known, of this Agreement before soliciting Fenci's employment, and it reviewed or should have reviewed the Agreement before offering him employment with Ettain.

57. Upon information and belief, Ettain has actual knowledge of the terms of the Agreement based upon communications sent from Fenci to Ettain regarding the terms of his Agreement.

58. Despite this knowledge and since hiring Fenci, Ettain has attempted to solicit other Randstad employees in the Texas Region where Fenci previously worked.

59. Ettain intentionally and unjustifiably induced or permitted Fenci's breach of his Agreement.

60. As a direct and proximate result of Ettain's tortious conduct, Randstad has been damaged in an amount to be proven at trial and, because its remedy at law is inadequate, seeks injunctive relief to protect its confidential information, goodwill, and other legitimate business interests.

## COUNT III
## ATTORNEYS' FEES

61. Randstad hereby repeats, re-alleges and incorporates by reference the allegations contained in the proceeding paragraphs as if fully set forth herein.

62. The Agreement specifically provides that Fenci shall reimburse Randstad for all reasonable legal fees and costs incurred by Randstad in connection with bringing a successful action to enforce the Agreement.

## PRAYER FOR RELIEF

**WHEREFORE**, Randstad respectfully requests that the Court:

A. Enter a permanent injunction against Fenci and Ettain preventing violations of the Agreement by Fenci and interference by Ettain;

B. Award Randstad its attorneys' fees and costs incurred in filing this Complaint;

C. Grant a trial by jury as to all matters properly triable to a jury;

D. Award Randstad such damages as may be proven at trial in an amount in excess of $75,000.00;

E. Award Randstad additional attorneys' fees and costs incurred at subsequent hearings or a trial of this case; and

F. Award Randstad such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Nathan J. Allen*
Nathan J. Allen
GA Bar No. 141304

**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**
One Ninety One Peachtree Tower
191 Peachtree St. NE, Suite 4800
Atlanta, GA 30303
Telephone: 404.881.1300
Facsimile: 404.870.1732
Nathan.Allen@ogletreedeakins.com

AND

Jana S. Baker
Texas Bar No. 00794610
*Pro Hac Vice Application Pending*
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**
8117 Preston Road, Suite 500
Dallas, TX 75225
Telephone: 214-987-3991
Facsimile: 214-987-3927
Jana.Baker@ogletreedeakins.com

**ATTORNEYS FOR PLAINTIFF**

29003662.3

# EXHIBIT A

Case 1:17-cv-00881-MHC Document 1 Filed 03/10/17 Page 23 of 29

randstad

Professionals

**Employee Non-Competition and Confidentiality Agreement**
*(Not for use in California)*

This Employee Non-Competition and Confidentiality Agreement (this "Agreement") is made and entered into by and between Walker Fenci ("Employee") and Randstad Technologies, LP, a Delaware limited partnership, with its principal place of business in Atlanta, Georgia (hereinafter the "Company").

WHEREAS, the Company desires to employ or continue employing Employee and to provide Employee with valuable training and access to the Company's Confidential Information and Trade Secrets; and the Employee desires such employment, training and access.

NOW, THEREFORE, in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt of which is hereby acknowledged, Employee and the Company agree as follows:

1. **At-Will Employment**. The Employee acknowledges that the Employee's employment with the Company is at-will and not for any prescribed term, meaning either party may terminate Employee's employment at any time, for any reason (except those reasons prohibited by law), with or without notice and with or without cause. The Employee's entitlement to compensation ends when the Employee's employment terminates for any reason. The parties acknowledge that Employee's duties, compensation, title and responsibilities may change over time; notwithstanding any such changes, the Employee will continue to have access to the Company's Confidential Information and Trade Secrets and this Agreement, unless modified in writing, shall continue to apply and be valid.

2. **Definitions**. For the purposes of this Agreement, the following definitions shall apply:

(a) "Business of the Company" means the services provided by the Company, including but not limited to temporary, temporary to hire, direct hire and outsourced placement and staffing services, solutions services or other services that are the same as or substantially similar to the services Employee provided on behalf of the Company within two (2) years prior to the date of Employee's separation from the Company.

(b) "Confidential Information" means data and information belonging to the Company (i) relating to the Business of the Company, (ii) which has been disclosed to the Employee or of which the Employee became aware as a consequence of or through Employee's relationship with the Company, (iii) which has value to the Company, and (iv) which is not generally known to the public or the Company's competitors. Without limiting the generality of the foregoing, "Confidential Information" includes the Company's proprietary processes and methods of operation, pricing, margin and mark-up information, strategic plans, training techniques and manuals, recruitment and placement strategies and targets, financial data and projections, sales and marketing information, personnel information, information concerning Placement Candidates and Talent (such as employment preferences, salary requirements/history, contact information, availability, customer feedback and interpersonal skills), and information concerning actual or prospective customers (such as hiring preferences, staffing needs, hiring manager contact information, pricing and job orders). Notwithstanding anything herein to the contrary, the term "Confidential Information" shall not be interpreted to include or mean any data or information that has been voluntarily disclosed to the public by the Company (except where such public disclosure has been made by the Employee without authorization from the Company), or that has been independently developed and disclosed by others, or that enters the public domain through lawful means.

(c) "Material Contact" means any contact between Employee and a customer, Placement Candidate or Talent (i) with whom or which Employee dealt on behalf of the Company; (ii) whose dealings with the Company were coordinated or supervised by the Employee; (iii) about whom Employee obtained Confidential Information in the ordinary course of business as a result of Employee's association with the Company; or (iv) who receives products or services authorized by the Company, the sale or provision of which results or resulted in

Case 1:17-cv-00881-MHC Document 1-1 Filed 03/10/17 Page 24 of 29

compensation, commissions, or earnings for the Company within two (2) years prior to the Employee's separation from employment with the Company.

(d) "Personal Information" consists of a person's first and last name (or first initial and last name), plus one or more of the following: (i) Social Security number; (ii) driver's license number or state-issued identification card number; (iii) bank account or other financial account number; (iv) credit or debit card number; or (v) (where provided by law) the person's e-mail address.

(e) "Placement Candidate" means (i) any person who was identified by the Company for placement on an assignment with a customer as of the date of Employee's separation of employment with the Company or (ii) any person who completed an assignment with the Company within the twenty-four (24) months prior to the date of Employee's separation of employment with the Company and is eligible to be placed on assignment with a customer again.

(f) "Restricted Territory" means the following geographic territory to the maximum extent determined to be reasonable by a court of competent jurisdiction:

(i) a radius of twenty-five (25) miles of any office(s) to which Employee was assigned or which Employee managed, during the twelve (12) months prior to the date of Employee's separation of employment with the Company;

(ii) a radius of twenty-five (25) miles of any office(s) in which Employee performed services on behalf of the Company at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company;

(iii) a radius of twenty-five (25) miles of any office(s) in which the Company employed personnel whom Employee directly or indirectly supervised or managed during the twelve (12) months prior to the date of Employee's separation of employment with the Company; and

(iv) any region or territory to which Employee was actually assigned or which Employee managed during the twelve (12) months prior to the date of Employee's separation of employment with the Company.,

(g) "Talent" means any employee who is placed by the Company on an assignment with a customer as of the date of Employee's separation of employment with the Company.

(h) "Trade Secrets" means Confidential Information which meets the additional requirements of the Uniform Trade Secrets Act or similar applicable law.

3. **Entrustment and Preservation of Confidential Information and Trade Secrets.**

(a) The Employee acknowledges that Confidential Information and Trade Secrets are valuable, special and unique assets of the Company's business. In the course of Employee's employment with the Company, the Company will disclose to Employee and grant Employee access to Confidential Information and Trade Secrets, and Employee desires to be, and will be, entrusted with such Confidential Information and Trade Secrets during employment by the Company. In consideration of the Company's entrusting to the Employee certain of its Confidential Information and Trade Secrets, the Employee shall not directly or indirectly reproduce, use, distribute, disclose, publish, or misappropriate any Confidential Information or Trade Secrets on behalf of Employee or any person or entity other than the Company for any purpose whatsoever (i) at any time during Employee's employment with the Company, and (ii) after Employee's separation from employment with the Company (for any reason) for so long as the information in question meets the definition of Confidential Information set forth in Section 2(b), up to a maximum of two (2) years from the date of such separation of employment; provided that as to any Confidential Information that constitutes a Trade Secret under applicable law, these restrictions shall apply for so long as the

information remains a Trade Secret. The Employee acknowledges that any such prohibited use or disclosure of Confidential Information or Trade Secrets is likely to cause irreparable harm and financial loss to the Company.

(b) Unless done for and on behalf of the Company during Employee's employment by the Company, Employee will never use or disclose any person's Personal Information which Employee may learn or acquire at any time during employment with the Company. Furthermore, Employee shall at all times take appropriate measures to protect against the loss of, or damage to, Personal Information in the Employee's possession or control.

4. **Restrictive Covenants.** The Employee acknowledges that the Company has expended substantial amounts of money, time and effort in developing and maintaining its extensive personnel resources, Confidential Information, Trade Secrets, goodwill and relationships with customers, Placement Candidates, Talent and associate (internal) employees. Consequently, the Employee shall devote his or her best efforts, attention and energies to the Company's business at all times during his or her employment. Furthermore, in consideration of the Company's initial and continuing employment of the Employee, the Company's provision to the Employee of initial and ongoing training regarding the Company's business, and the Company's entrustment to the Employee of the Company's Confidential Information and Trade Secrets (without such training and entrustment of Confidential Information and Trade Secrets Employee acknowledges that he or she could not perform his or her job duties and responsibilities), the Employee agrees as follows:

(a) During Employee's employment with the Company and the twelve (12) month period immediately following the date of Employee's separation of employment with the Company, regardless of the reason for such separation, Employee shall not, directly or indirectly, on Employee's own behalf or on behalf of any person or entity other than the Company:

(i) contact, solicit, service, sell to, or attempt to contact, solicit, service, or sell to any customer of the Company with whom Employee had Material Contact at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company for the purpose of providing services competitive with the Business of the Company;

(ii) contact, solicit, service, place, or attempt to contact, solicit, service, or place any Placement Candidate or Talent with whom the Employee had Material Contact at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company for the purpose of providing services competitive with the Business of the Company;

(iii) contact, recruit, or solicit, or attempt to contact, recruit, or solicit any associate (internal) employee of the Company with whom the Employee worked at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company for the purpose of encouraging, enticing or causing such associate (internal) employee to terminate employment with the Company, or to accept employment with any person or entity that competes with the Business of the Company; or

(iv) hire any associate (internal) employee of the Company with whom the Employee worked at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company for any person or entity that competes with the Business of the Company.

(b) During his or her period of employment with the Company, Employee shall not, directly or indirectly, engage in (or own more than a five (5) percent interest in any entity which engages in) activities or services competitive with the Business of the Company.

(c) During Employee's employment with the Company and the twelve (12) month period immediately following the date of Employee's separation of employment with the Company, regardless of the reason for such separation, Employee shall not, within the Restricted Territory, directly or indirectly, operate, control, or own

Case 1:17-cv-00881-MHC Document 1-4 Filed 03/10/17 Page 26 of 31

any entity which engages in activities competitive with the Business of the Company (other than owning, as a passive investment, no more than a five (5) percent interest in any such entity).

(d) During Employee's employment with the Company and the twelve (12) month period immediately following the date of Employee's separation of employment with the Company, regardless of the reason for such separation, Employee shall not, within the Restricted Territory, directly or indirectly, on Employee's own behalf or on behalf of any person or entity other than the Company, hold any position as an employee, agent, contractor, or otherwise, for or with any person or entity which engages in activities competitive with the Business of the Company if such position involves:

(i) providing products or services competitive with the Business of the Company;

(ii) supervising employees or other personnel who provide products or services competitive with the Business of the Company;

(iii) developing or implementing strategies or methodologies related to products or services competitive with the Business of the Company; or

(iv) engaging in responsibilities in which Employee would utilize or disclose Confidential Information.

(e) Within seven (7) days of the separation (for any reason) of Employee's employment with the Company, Employee shall delete social media connections, including LinkedIn connections, with any (i) customer of the Company with whom Employee had Material Contact at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company; and (ii) Placement Candidates or Talent with whom the Employee had Material Contact at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company.

5. **Disclosure and Assignment of Inventions**. All discoveries, inventions, processes, designs, plans, writings, creations, programs, product improvements, materials, Confidential Information, and Trade Secrets ("Work Made for Hire") whether of a technical nature or not, made or developed by Employee alone or in conjunction with any other person or entity during the course of Employee's employment with the Company, which relate to or affect the business of the Company, shall be the sole and exclusive property of the Company. Employee shall disclose and release all such Work Made for Hire and all information regarding the same to the Company concurrent with the discovery or development of the same. Employee shall and hereby does assign all rights, title, and interest in any such Work Made for Hire to the Company. Employee shall not use or disclose the Company's Work Made for Hire to benefit a person or business that competes with the Company, a customer of the Company, an individual or other entity (except in performing his or her obligations to the Company during his or her employment with the Company), without the express, written permission of the Company. Employee hereby irrevocably assigns any such Work Made for Hire to the Company and shall execute and deliver promptly to the Company such assignments and other written instruments, and to do such other acts as may be required to patent, copyright or otherwise protect such Work Made for Hire and to invest the entire right, title and interest in such Work Made for Hire in the Company.

6. **Return of Company Documents and Equipment**. The Employee acknowledges that all originals, copies and summaries of manuals, memoranda, notes, notebooks, records, reports, plans, computer-based data in any form, tabulations or compilations, and other documents or items of any kind concerning any matters affecting or relating to the present or potential business of the Company, whether or not they contain Confidential Information or Trade Secrets, and all Company-owned equipment which may be provided for Employee's use while employed by the Company, are and shall continue to be the property of the Company. The Employee shall return to the Company all such documents and equipment in the possession or under the control of the Employee immediately upon the date of Employee's separation of employment with the Company or sooner if requested by the Company.

Case 1:17-cv-00881-MHC Document 1-4 Filed 03/10/17 Page 27 of 29

7. **Freedom to Contract**. The Employee represents to the Company that he or she has the legal right to enter into this Agreement without violating any other employment agreement or consulting arrangement, including any non-competition, non-solicitation or confidentiality agreements (collectively, "Other Contracts"), and that he or she will not become subject to any Other Contracts in conflict with this Agreement during the Employee's employment with the Company. Employee further represents that he or she will not upload to the Company's systems, disclose to the Company, or use for the Company's benefit any trade secrets or confidential information which is the property of any prior employer or other third party. If Employee fails to disclose or breaches any Other Contracts, the Company may incur significant legal exposure and expenses. Accordingly, in the event of any such failure to disclose or breach of Other Contracts, the Company reserves the right to terminate Employee's employment and to seek all available legal remedies in connection with the breach of the representations set forth in this Section.

8. **Enforcement and Damages**. The Employee acknowledges that the Company will suffer irreparable injury and damage and cannot be reasonably or adequately compensated in monetary damages alone for the loss by the Company of its benefits or rights under this Agreement as the result of a breach, default or violation by the Employee of any of his or her obligations under this Agreement. Accordingly, the Company shall be entitled, in addition to all other remedies which may be available to it (including monetary damages), to injunctive and other available equitable relief in any court of competent jurisdiction in Cobb County, Georgia to prevent or otherwise restrain or terminate any actual or threatened breach, default or violation by the Employee of any provision of this Agreement or to enforce any such provision. The Company will not be required to post any bond as a condition of the Company receiving such injunctive relief, and the Employee hereby specifically waives the right to request or require the posting of a bond as a condition of the Company receiving injunctive relief. The Employee shall reimburse the Company for all reasonable legal fees and costs incurred by the Company in connection with bringing a successful action to enforce this Agreement.

9. **Compliance with Policies/Procedure for Complaints**. The Employee shall comply with all applicable Company policies of which he or she has been made aware, including but not limited to those policies found in the Employee Handbook published on the Human Resources Department's page of Randstad Connect (https://www.randstadconnect.com/sites/HR). In addition, the Employee shall at all times act in conformity with the Company's Business Principles (http://www.randstad.com/corporate-governance/our-principles/business-principles), and the Employee acknowledges that he or she has been apprised of the Company's Misconduct Reporting Procedure (see link within Business Principles). In the event that a complaint is warranted under the Misconduct Reporting Procedure, the Employee may call 1-866-250-6706 or visit www.speakupfeedback.eu/web/integrityatrandstad/us. In connection with either reporting mechanism, the access code is 42115. The Employee acknowledges that by this Agreement, the Employee has been notified that if he or she has any questions or concerns about his or her employment, the Company's policies or principles, or if the Employee has a complaint of any kind concerning his or her employment, that the Employee has the right and is encouraged to notify his or her Human Resources (HR) Business Partner.

10. **Miscellaneous**.

(a) The Employee acknowledges that his or her obligations under this Agreement are personal and that he or she may not assign any of his or her rights or delegate any of his or her duties or obligations under this Agreement. The Company may assign, without notice to the Employee, its rights and obligations under this Agreement, which shall inure to the benefit of, and shall be binding upon, the successors and assigns of the Company.

(b) If, after executing this Agreement, Employee: (i) is promoted to, assigned to or otherwise assumes one or more positions or functions other than or in addition to Employee's position or functions at the time Employee signed this Agreement, regardless of title, or (ii) is transferred or assigned to or otherwise works for any affiliate, subsidiary or other division or business unit of the Company, the terms of this Agreement shall continue to apply with full force and effect.

Case 1:17-cv-00881-MHC Document 1-4 Filed 03/10/17 Page 28 of 31

(c) The Employee acknowledges that the covenants contained in Sections 3 and 4 are reasonable and essential to protect the Company's Confidential Information, Trade Secrets, goodwill and its relationships with customers, Placement Candidates, Talent and associate (internal) employees, and that such covenants will not impair the Employee's ability to procure subsequent comparable employment.

(d) This Agreement may be executed in two or more counterparts, all of which together shall constitute a single agreement. A copy, .pdf/.jpg or facsimile shall be treated as an original Agreement for all purposes.

(e) Each of the covenants and provisions contained in this Agreement is severable and shall be enforceable independently of every other provision. In the event that any provision of this Agreement shall be held to be overly broad in any respect (including, without limitation as to scope, geographic applicability, time period, activity or subject) so as to be unenforceable as written and agreed to by the parties, it is the parties' intention that such provision shall be construed by the appropriate court or arbitrator by limiting or reducing it so as to be enforceable to the fullest extent compatible with the then applicable law, and the parties hereby specifically request that any such court or arbitrator exercise its discretion consistent with this intention.

(f) If Employee previously executed other written agreements with the Company relating to the subject matter of this Agreement, and/or if Employee later enters into other written agreements that contain provisions similar to the provisions contained in this Agreement, all such provisions shall be interpreted to provide the Company with cumulative rights and remedies, and the benefits and protections provided to the Company under each such agreement shall be given full force and effect. No prior or contemporaneous agreement, whether written or oral, shall be construed to change, amend, alter, repeal or invalidate this Agreement.

(g) A waiver by one party of a breach of this Agreement by the other party shall not be construed as a waiver of any subsequent or similar breach.

(h) This Agreement may be amended or terminated only by written agreement of both parties.

(i) Nothing in this Agreement shall relieve Employee of any duties or obligations Employee has to the Company under statutory or common law, which include but are not limited to: fiduciary duties, the duty of loyalty, the duty not to tortiously interfere with business relationships, the duty not to engage in unfair competition, and the duty not to misappropriate any Trade Secrets.

(j) Employee acknowledges that the Company provided Employee with a copy of this Agreement prior to or concurrent with making an offer of employment, or an offer of change in Employee's job classification, or implementation of a merit increase or other change in the Employee's compensation and benefits, and informed Employee, prior to Employee's execution of this Agreement, that this Agreement is required as a condition of employment with the Company.

11. **Agreement Comprehension and Legal Advice**. The Employee represents that he or she has read this Agreement completely and carefully and that he or she understands the contents and effect of this Agreement. Employee further represents that he or she has had the opportunity to consult with an attorney before voluntarily signing below and has either consulted with an attorney or waived the opportunity to do so.

12. **Governing Law and Selection of Forum**. This Agreement and the rights and obligations of the parties hereunder shall be construed and enforced in accordance with, and all questions concerning the construction, validity, interpretation and performance of this Agreement shall be governed by, the laws of the state of Georgia, without giving effect to provisions thereof regarding conflict of laws. Any claims arising out of or related to the covenants in Sections 3, 4, 5, and 6 of this Agreement, all claims arising under applicable law governing trade secrets, and all claims for emergency injunctive relief, must be litigated exclusively in the Superior or State Courts of Cobb County, Georgia, provided, however, that any such claim or cause of action may be brought in, or removed to, the United States District Court for the Northern District of Georgia, Atlanta Division, to the extent that such court would have jurisdiction over the subject matter of such action. The Employee and the Company waive any objection

Case 1:17-cv-00881-MHC Document 1 Filed 03/10/17 Page 29 of 29

based on personal jurisdiction and forum non conveniens and waive any objection to venue of any action instituted hereunder to the extent that an action is brought in the courts identified above. Each party agrees that a final judgment in any such action shall be conclusive and may be enforced in any other jurisdiction in any manner provided by law.

**IN WITNESS WHEREOF,** the parties have signed this agreement as of this 25th day of June, 2015.

**Employee**:

Walker Fenci
(Signature)

Walker Fenci
(Print Name)

**Randstad Technologies, LP**:

By: Angela Harris

Angela Harris, SVP HR
(Print Name and Title)

Case 1:17-cv-00881-MHC Document 1-1 Filed 03/10/17 Page 1 of 2

JS44 (Rev. 11/16 NDGA) **CIVIL COVER SHEET**

The JS44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form is required for the use of the Clerk of Court for the purpose of initiating the civil docket record. (SEE INSTRUCTIONS ATTACHED)

## I. (a) PLAINTIFF(S)

Randstad Technologies, LLC

## DEFENDANT(S)

Walker Fenci and Ettain Group

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ____________
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ____________
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

## (c) ATTORNEYS (FIRM NAME, ADDRESS, TELEPHONE NUMBER, AND E-MAIL ADDRESS)

Nathan J. Allen
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Ninety One Peachtree Tower
191 Peachtree St. NE, Suite 4800
Atlanta, GA 30303

## ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION

(PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. GOVERNMENT PLAINTIFF
- ☐ 2 U.S. GOVERNMENT DEFENDANT
- ☐ 3 FEDERAL QUESTION (U.S. GOVERNMENT NOT A PARTY)
- ☑ 4 DIVERSITY (INDICATE CITIZENSHIP OF PARTIES IN ITEM III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES

(PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(FOR DIVERSITY CASES ONLY)

| PLF | DEF | | PLF | DEF | |
|---|---|---|---|---|---|
| ☐ 1 | ☐ 1 | CITIZEN OF THIS STATE | ☑ 4 | ☐ 4 | INCORPORATED OR PRINCIPAL PLACE OF BUSINESS IN THIS STATE |
| ☐ 2 | ☐ 2 | CITIZEN OF ANOTHER STATE | ☐ 5 | ☑ 5 | INCORPORATED AND PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE |
| ☐ 3 | ☐ 3 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | ☐ 6 | ☐ 6 | FOREIGN NATION |

## IV. ORIGIN (PLACE AN "X "IN ONE BOX ONLY)

- ☑ 1 ORIGINAL PROCEEDING
- ☐ 2 REMOVED FROM STATE COURT
- ☐ 3 REMANDED FROM APPELLATE COURT
- ☐ 4 REINSTATED OR REOPENED
- ☐ 5 TRANSFERRED FROM ANOTHER DISTRICT (Specify District)
- ☐ 6 MULTIDISTRICT LITIGATION - TRANSFER
- ☐ 7 APPEAL TO DISTRICT JUDGE FROM MAGISTRATE JUDGE JUDGMENT
- ☐ 8 MULTIDISTRICT LITIGATION - DIRECT FILE

## V. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE - DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C. Section 1332

**(IF COMPLEX, CHECK REASON BELOW)**

- ☐ 1. Unusually large number of parties.
- ☐ 2. Unusually large number of claims or defenses.
- ☐ 3. Factual issues are exceptionally complex
- ☐ 4. Greater than normal volume of evidence.
- ☐ 5. Extended discovery period is needed.
- ☐ 6. Problems locating or preserving evidence
- ☐ 7. Pending parallel investigations or actions by government.
- ☐ 8. Multiple use of experts.
- ☐ 9. Need for discovery outside United States boundaries.
- ☐ 10. Existence of highly technical issues and proof.

CONTINUED ON REVERSE

FOR OFFICE USE ONLY

RECEIPT # ________ AMOUNT $ ________ APPLYING IFP ________ MAG. JUDGE (IFP) ________

JUDGE ________ MAG. JUDGE ________ (Referral) NATURE OF SUIT ________ CAUSE OF ACTION ________

## VI. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

**CONTRACT - "0" MONTHS DISCOVERY TRACK**
- ☐ 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
- ☐ 152 RECOVERY OF DEFAULTED STUDENT LOANS (Excl. Veterans)
- ☐ 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS

**CONTRACT - "4" MONTHS DISCOVERY TRACK**
- ☐ 110 INSURANCE
- ☐ 120 MARINE
- ☐ 130 MILLER ACT
- ☐ 140 NEGOTIABLE INSTRUMENT
- ☐ 151 MEDICARE ACT
- ☐ 160 STOCKHOLDERS' SUITS
- ☑ 190 OTHER CONTRACT
- ☐ 195 CONTRACT PRODUCT LIABILITY
- ☐ 196 FRANCHISE

**REAL PROPERTY - "4" MONTHS DISCOVERY TRACK**
- ☐ 210 LAND CONDEMNATION
- ☐ 220 FORECLOSURE
- ☐ 230 RENT LEASE & EJECTMENT
- ☐ 240 TORTS TO LAND
- ☐ 245 TORT PRODUCT LIABILITY
- ☐ 290 ALL OTHER REAL PROPERTY

**TORTS - PERSONAL INJURY - "4" MONTHS DISCOVERY TRACK**
- ☐ 310 AIRPLANE
- ☐ 315 AIRPLANE PRODUCT LIABILITY
- ☐ 320 ASSAULT, LIBEL & SLANDER
- ☐ 330 FEDERAL EMPLOYERS' LIABILITY
- ☐ 340 MARINE
- ☐ 345 MARINE PRODUCT LIABILITY
- ☐ 350 MOTOR VEHICLE
- ☐ 355 MOTOR VEHICLE PRODUCT LIABILITY
- ☐ 360 OTHER PERSONAL INJURY
- ☐ 362 PERSONAL INJURY - MEDICAL MALPRACTICE
- ☐ 365 PERSONAL INJURY - PRODUCT LIABILITY
- ☐ 367 PERSONAL INJURY - HEALTH CARE/ PHARMACEUTICAL PRODUCT LIABILITY
- ☐ 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**TORTS - PERSONAL PROPERTY - "4" MONTHS DISCOVERY TRACK**
- ☐ 370 OTHER FRAUD
- ☐ 371 TRUTH IN LENDING
- ☐ 380 OTHER PERSONAL PROPERTY DAMAGE
- ☐ 385 PROPERTY DAMAGE PRODUCT LIABILITY

**BANKRUPTCY - "0" MONTHS DISCOVERY TRACK**
- ☐ 422 APPEAL 28 USC 158
- ☐ 423 WITHDRAWAL 28 USC 157

**CIVIL RIGHTS - "4" MONTHS DISCOVERY TRACK**
- ☐ 440 OTHER CIVIL RIGHTS
- ☐ 441 VOTING
- ☐ 442 EMPLOYMENT
- ☐ 443 HOUSING/ ACCOMMODATIONS
- ☐ 445 AMERICANS with DISABILITIES - Employment
- ☐ 446 AMERICANS with DISABILITIES - Other
- ☐ 448 EDUCATION

**IMMIGRATION - "0" MONTHS DISCOVERY TRACK**
- ☐ 462 NATURALIZATION APPLICATION
- ☐ 465 OTHER IMMIGRATION ACTIONS

**PRISONER PETITIONS - "0" MONTHS DISCOVERY TRACK**
- ☐ 463 HABEAS CORPUS- Alien Detainee
- ☐ 510 MOTIONS TO VACATE SENTENCE
- ☐ 530 HABEAS CORPUS
- ☐ 535 HABEAS CORPUS DEATH PENALTY
- ☐ 540 MANDAMUS & OTHER
- ☐ 550 CIVIL RIGHTS - Filed Pro se
- ☐ 555 PRISON CONDITION(S) - Filed Pro se
- ☐ 560 CIVIL DETAINEE: CONDITIONS OF CONFINEMENT

**PRISONER PETITIONS - "4" MONTHS DISCOVERY TRACK**
- ☐ 550 CIVIL RIGHTS - Filed by Counsel
- ☐ 555 PRISON CONDITION(S) - Filed by Counsel

**FORFEITURE/PENALTY - "4" MONTHS DISCOVERY TRACK**
- ☐ 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
- ☐ 690 OTHER

**LABOR - "4" MONTHS DISCOVERY TRACK**
- ☐ 710 FAIR LABOR STANDARDS ACT
- ☐ 720 LABOR/MGMT. RELATIONS
- ☐ 740 RAILWAY LABOR ACT
- ☐ 751 FAMILY and MEDICAL LEAVE ACT
- ☐ 790 OTHER LABOR LITIGATION
- ☐ 791 EMPL. RET. INC. SECURITY ACT

**PROPERTY RIGHTS - "4" MONTHS DISCOVERY TRACK**
- ☐ 820 COPYRIGHTS
- ☐ 840 TRADEMARK

**PROPERTY RIGHTS - "8" MONTHS DISCOVERY TRACK**
- ☐ 830 PATENT

**SOCIAL SECURITY - "0" MONTHS DISCOVERY TRACK**
- ☐ 861 HIA (1395ff)
- ☐ 862 BLACK LUNG (923)
- ☐ 863 DIWC (405(g))
- ☐ 863 DIWW (405(g))
- ☐ 864 SSID TITLE XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS - "4" MONTHS DISCOVERY TRACK**
- ☐ 870 TAXES (U.S. Plaintiff or Defendant)
- ☐ 871 IRS - THIRD PARTY 26 USC 7609

**OTHER STATUTES - "4" MONTHS DISCOVERY TRACK**
- ☐ 375 FALSE CLAIMS ACT
- ☐ 376 Qui Tam 31 USC 3729(a)
- ☐ 400 STATE REAPPORTIONMENT
- ☐ 430 BANKS AND BANKING
- ☐ 450 COMMERCE/ICC RATES/ETC.
- ☐ 460 DEPORTATION
- ☐ 470 RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS
- ☐ 480 CONSUMER CREDIT
- ☐ 490 CABLE/SATELLITE TV
- ☐ 890 OTHER STATUTORY ACTIONS
- ☐ 891 AGRICULTURAL ACTS
- ☐ 893 ENVIRONMENTAL MATTERS
- ☐ 895 FREEDOM OF INFORMATION ACT
- ☐ 899 ADMINISTRATIVE PROCEDURES ACT / REVIEW OR APPEAL OF AGENCY DECISION
- ☐ 950 CONSTITUTIONALITY OF STATE STATUTES

**OTHER STATUTES - "8" MONTHS DISCOVERY TRACK**
- ☐ 410 ANTITRUST
- ☐ 850 SECURITIES / COMMODITIES / EXCHANGE

**OTHER STATUTES - "0" MONTHS DISCOVERY TRACK**
- ☐ 896 ARBITRATION (Confirm / Vacate / Order / Modify)

*** PLEASE NOTE DISCOVERY TRACK FOR EACH CASE TYPE. SEE LOCAL RULE 26.3**

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF CLASS ACTION UNDER F.R.Civ.P. 23 DEMAND $____________

JURY DEMAND ☐ YES ☑ NO (CHECK YES ONLY IF DEMANDED IN COMPLAINT)

## VIII. RELATED/REFILED CASE(S) IF ANY

JUDGE____________ DOCKET NO.____________

CIVIL CASES ARE DEEMED RELATED IF THE PENDING CASE INVOLVES: (CHECK APPROPRIATE BOX)

- ☐ 1. PROPERTY INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- ☐ 2. SAME ISSUE OF FACT OR ARISES OUT OF THE SAME EVENT OR TRANSACTION INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- ☐ 3. VALIDITY OR INFRINGEMENT OF THE SAME PATENT, COPYRIGHT OR TRADEMARK INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- ☐ 4. APPEALS ARISING OUT OF THE SAME BANKRUPTCY CASE AND ANY CASE RELATED THERETO WHICH HAVE BEEN DECIDED BY THE SAME BANKRUPTCY JUDGE.
- ☐ 5. REPETITIVE CASES FILED BY PRO SE LITIGANTS.
- ☐ 6. COMPANION OR RELATED CASE TO CASE(S) BEING SIMULTANEOUSLY FILED (INCLUDE ABBREVIATED STYLE OF OTHER CASE(S)):
- ☐ 7. EITHER SAME OR ALL OF THE PARTIES AND ISSUES IN THIS CASE WERE PREVIOUSLY INVOLVED IN CASE NO. , WHICH WAS DISMISSED. This case ☐ IS ☐ IS NOT (check one box) SUBSTANTIALLY THE SAME CASE.

SIGNATURE OF ATTORNEY OF RECORD

DATE 3/10/17