# EXHIBIT 1

randstad

Professionals

**Employee Non-Competition and Confidentiality Agreement**
*(Not for use in California)*

This Employee Non-Competition and Confidentiality Agreement (this "Agreement") is made and entered into by and between Jeff Luna ("Employee") and Randstad Technologies, LP, a Delaware limited partnership, with its principal place of business in Atlanta, Georgia (hereinafter the "Company").

WHEREAS, the Company desires to employ or continue employing Employee and to provide Employee with valuable training and access to the Company's Confidential Information and Trade Secrets; and the Employee desires such employment, training and access.

NOW, THEREFORE, in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt of which is hereby acknowledged, Employee and the Company agree as follows:

1. **At-Will Employment**. The Employee acknowledges that the Employee's employment with the Company is at-will and not for any prescribed term, meaning either party may terminate Employee's employment at any time, for any reason (except those reasons prohibited by law), with or without notice and with or without cause. The Employee's entitlement to compensation ends when the Employee's employment terminates for any reason. The parties acknowledge that Employee's duties, compensation, title and responsibilities may change over time; notwithstanding any such changes, the Employee will continue to have access to the Company's Confidential Information and Trade Secrets and this Agreement, unless modified in writing, shall continue to apply and be valid.

2. **Definitions**. For the purposes of this Agreement, the following definitions shall apply:

(a) "Business of the Company" means the services provided by the Company, including but not limited to temporary, temporary to hire, direct hire and outsourced placement and staffing services, solutions services or other services that are the same as or substantially similar to the services Employee provided on behalf of the Company within two (2) years prior to the date of Employee's separation from the Company.

(b) "Confidential Information" means data and information belonging to the Company (i) relating to the Business of the Company, (ii) which has been disclosed to the Employee or of which the Employee became aware as a consequence of or through Employee's relationship with the Company, (iii) which has value to the Company, and (iv) which is not generally known to the public or the Company's competitors. Without limiting the generality of the foregoing, "Confidential Information" includes the Company's proprietary processes and methods of operation, pricing, margin and mark-up information, strategic plans, training techniques and manuals, recruitment and placement strategies and targets, financial data and projections, sales and marketing information, personnel information, information concerning Placement Candidates and Talent (such as employment preferences, salary requirements/history, contact information, availability, customer feedback and interpersonal skills), and information concerning actual or prospective customers (such as hiring preferences, staffing needs, hiring manager contact information, pricing and job orders). Notwithstanding anything herein to the contrary, the term "Confidential Information" shall not be interpreted to include or mean any data or information that has been voluntarily disclosed to the public by the Company (except where such public disclosure has been made by the Employee without authorization from the Company), or that has been independently developed and disclosed by others, or that enters the public domain through lawful means.

(c) "Material Contact" means any contact between Employee and a customer, Placement Candidate or Talent (i) with whom or which Employee dealt on behalf of the Company; (ii) whose dealings with the Company were coordinated or supervised by the Employee; (iii) about whom Employee obtained Confidential Information in the ordinary course of business as a result of Employee's association with the Company; or (iv) who receives products or services authorized by the Company, the sale or provision of which results or resulted in

compensation, commissions, or earnings for the Company within two (2) years prior to the Employee's separation from employment with the Company.

(d) "Personal Information" consists of a person's first and last name (or first initial and last name), plus one or more of the following: (i) Social Security number; (ii) driver's license number or state-issued identification card number; (iii) bank account or other financial account number; (iv) credit or debit card number; or (v) (where provided by law) the person's e-mail address.

(e) "Placement Candidate" means (i) any person who was identified by the Company for placement on an assignment with a customer as of the date of Employee's separation of employment with the Company or (ii) any person who completed an assignment with the Company within the twenty-four (24) months prior to the date of Employee's separation of employment with the Company and is eligible to be placed on assignment with a customer again.

(f) "Restricted Territory" means the following geographic territory to the maximum extent determined to be reasonable by a court of competent jurisdiction:

(i) a radius of twenty-five (25) miles of any office(s) to which Employee was assigned or which Employee managed, during the twelve (12) months prior to the date of Employee's separation of employment with the Company;

(ii) a radius of twenty-five (25) miles of any office(s) in which Employee performed services on behalf of the Company at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company;

(iii) a radius of twenty-five (25) miles of any office(s) in which the Company employed personnel whom Employee directly or indirectly supervised or managed during the twelve (12) months prior to the date of Employee's separation of employment with the Company; and

(iv) any region or territory to which Employee was actually assigned or which Employee managed during the twelve (12) months prior to the date of Employee's separation of employment with the Company.

(g) "Talent" means any employee who is placed by the Company on an assignment with a customer as of the date of Employee's separation of employment with the Company.

(h) "Trade Secrets" means Confidential Information which meets the additional requirements of the Uniform Trade Secrets Act or similar applicable law.

3. <u>**Entrustment and Preservation of Confidential Information and Trade Secrets**</u>.

(a) The Employee acknowledges that Confidential Information and Trade Secrets are valuable, special and unique assets of the Company's business. In the course of Employee's employment with the Company, the Company will disclose to Employee and grant Employee access to Confidential Information and Trade Secrets, and Employee desires to be, and will be, entrusted with such Confidential Information and Trade Secrets during employment by the Company. In consideration of the Company's entrusting to the Employee certain of its Confidential Information and Trade Secrets, the Employee shall not directly or indirectly reproduce, use, distribute, disclose, publish, or misappropriate any Confidential Information or Trade Secrets on behalf of Employee or any person or entity other than the Company for any purpose whatsoever (i) at any time during Employee's employment with the Company, and (ii) after Employee's separation from employment with the Company (for any reason) for so long as the information in question meets the definition of Confidential Information set forth in Section 2(b), up to a maximum of two (2) years from the date of such separation of employment; provided that as to any Confidential Information that constitutes a Trade Secret under applicable law, these restrictions shall apply for so long as the

information remains a Trade Secret. The Employee acknowledges that any such prohibited use or disclosure of Confidential Information or Trade Secrets is likely to cause irreparable harm and financial loss to the Company.

(b) Unless done for and on behalf of the Company during Employee's employment by the Company, Employee will never use or disclose any person's Personal Information which Employee may learn or acquire at any time during employment with the Company. Furthermore, Employee shall at all times take appropriate measures to protect against the loss of, or damage to, Personal Information in the Employee's possession or control.

4. **Restrictive Covenants**. The Employee acknowledges that the Company has expended substantial amounts of money, time and effort in developing and maintaining its extensive personnel resources, Confidential Information, Trade Secrets, goodwill and relationships with customers, Placement Candidates, Talent and associate (internal) employees. Consequently, the Employee shall devote his or her best efforts, attention and energies to the Company's business at all times during his or her employment. Furthermore, in consideration of the Company's initial and continuing employment of the Employee, the Company's provision to the Employee of initial and ongoing training regarding the Company's business, and the Company's entrustment to the Employee of the Company's Confidential Information and Trade Secrets (without such training and entrustment of Confidential Information and Trade Secrets Employee acknowledges that he or she could not perform his or her job duties and responsibilities), the Employee agrees as follows:

(a) During Employee's employment with the Company and the twelve (12) month period immediately following the date of Employee's separation of employment with the Company, regardless of the reason for such separation, Employee shall not, directly or indirectly, on Employee's own behalf or on behalf of any person or entity other than the Company:

(i) contact, solicit, service, sell to, or attempt to contact, solicit, service, or sell to any customer of the Company with whom Employee had Material Contact at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company for the purpose of providing services competitive with the Business of the Company;

(ii) contact, solicit, service, place, or attempt to contact, solicit, service, or place any Placement Candidate or Talent with whom the Employee had Material Contact at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company for the purpose of providing services competitive with the Business of the Company;

(iii) contact, recruit, or solicit, or attempt to contact, recruit, or solicit any associate (internal) employee of the Company with whom the Employee worked at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company for the purpose of encouraging, enticing or causing such associate (internal) employee to terminate employment with the Company, or to accept employment with any person or entity that competes with the Business of the Company; or

(iv) hire any associate (internal) employee of the Company with whom the Employee worked at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company for any person or entity that competes with the Business of the Company.

(b) During his or her period of employment with the Company, Employee shall not, directly or indirectly, engage in (or own more than a five (5) percent interest in any entity which engages in) activities or services competitive with the Business of the Company.

(c) During Employee's employment with the Company and the twelve (12) month period immediately following the date of Employee's separation of employment with the Company, regardless of the reason for such separation, Employee shall not, within the Restricted Territory, directly or indirectly, operate, control, or own

any entity which engages in activities competitive with the Business of the Company (other than owning, as a passive investment, no more than a five (5) percent interest in any such entity).

(d) During Employee's employment with the Company and the twelve (12) month period immediately following the date of Employee's separation of employment with the Company, regardless of the reason for such separation, Employee shall not, within the Restricted Territory, directly or indirectly, on Employee's own behalf or on behalf of any person or entity other than the Company, hold any position as an employee, agent, contractor, or otherwise, for or with any person or entity which engages in activities competitive with the Business of the Company if such position involves:

(i) providing products or services competitive with the Business of the Company;

(ii) supervising employees or other personnel who provide products or services competitive with the Business of the Company;

(iii) developing or implementing strategies or methodologies related to products or services competitive with the Business of the Company; or

(iv) engaging in responsibilities in which Employee would utilize or disclose Confidential Information.

(e) Within seven (7) days of the separation (for any reason) of Employee's employment with the Company, Employee shall delete social media connections, including LinkedIn connections, with any (i) customer of the Company with whom Employee had Material Contact at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company; and (ii) Placement Candidates or Talent with whom the Employee had Material Contact at any time during the twelve (12) months prior to the date of Employee's separation of employment with the Company.

5. **Disclosure and Assignment of Inventions**. All discoveries, inventions, processes, designs, plans, writings, creations, programs, product improvements, materials, Confidential Information, and Trade Secrets ("Work Made for Hire") whether of a technical nature or not, made or developed by Employee alone or in conjunction with any other person or entity during the course of Employee's employment with the Company, which relate to or affect the business of the Company, shall be the sole and exclusive property of the Company. Employee shall disclose and release all such Work Made for Hire and all information regarding the same to the Company concurrent with the discovery or development of the same. Employee shall and hereby does assign all rights, title, and interest in any such Work Made for Hire to the Company. Employee shall not use or disclose the Company's Work Made for Hire to benefit a person or business that competes with the Company, a customer of the Company, an individual or other entity (except in performing his or her obligations to the Company during his or her employment with the Company), without the express, written permission of the Company. Employee hereby irrevocably assigns any such Work Made for Hire to the Company and shall execute and deliver promptly to the Company such assignments and other written instruments, and to do such other acts as may be required to patent, copyright or otherwise protect such Work Made for Hire and to invest the entire right, title and interest in such Work Made for Hire in the Company.

6. **Return of Company Documents and Equipment**. The Employee acknowledges that all originals, copies and summaries of manuals, memoranda, notes, notebooks, records, reports, plans, computer-based data in any form, tabulations or compilations, and other documents or items of any kind concerning any matters affecting or relating to the present or potential business of the Company, whether or not they contain Confidential Information or Trade Secrets, and all Company-owned equipment which may be provided for Employee's use while employed by the Company, are and shall continue to be the property of the Company. The Employee shall return to the Company all such documents and equipment in the possession or under the control of the Employee immediately upon the date of Employee's separation of employment with the Company or sooner if requested by the Company.

7. **Freedom to Contract**. The Employee represents to the Company that he or she has the legal right to enter into this Agreement without violating any other employment agreement or consulting arrangement, including any non-competition, non-solicitation or confidentiality agreements (collectively, "Other Contracts"), and that he or she will not become subject to any Other Contracts in conflict with this Agreement during the Employee's employment with the Company. Employee further represents that he or she will not upload to the Company's systems, disclose to the Company, or use for the Company's benefit any trade secrets or confidential information which is the property of any prior employer or other third party. If Employee fails to disclose or breaches any Other Contracts, the Company may incur significant legal exposure and expenses. Accordingly, in the event of any such failure to disclose or breach of Other Contracts, the Company reserves the right to terminate Employee's employment and to seek all available legal remedies in connection with the breach of the representations set forth in this Section.

8. **Enforcement and Damages**. The Employee acknowledges that the Company will suffer irreparable injury and damage and cannot be reasonably or adequately compensated in monetary damages alone for the loss by the Company of its benefits or rights under this Agreement as the result of a breach, default or violation by the Employee of any of his or her obligations under this Agreement. Accordingly, the Company shall be entitled, in addition to all other remedies which may be available to it (including monetary damages), to injunctive and other available equitable relief in any court of competent jurisdiction in Cobb County, Georgia to prevent or otherwise restrain or terminate any actual or threatened breach, default or violation by the Employee of any provision of this Agreement or to enforce any such provision. The Company will not be required to post any bond as a condition of the Company receiving such injunctive relief, and the Employee hereby specifically waives the right to request or require the posting of a bond as a condition of the Company receiving injunctive relief. The Employee shall reimburse the Company for all reasonable legal fees and costs incurred by the Company in connection with bringing a successful action to enforce this Agreement.

9. **Compliance with Policies/Procedure for Complaints**. The Employee shall comply with all applicable Company policies of which he or she has been made aware, including but not limited to those policies found in the Employee Handbook published on the Human Resources Department's page of Randstad Connect (https://www.randstadconnect.com/sites/HR). In addition, the Employee shall at all times act in conformity with the Company's Business Principles (http://www.randstad.com/corporate-governance/our-principles/business-principles), and the Employee acknowledges that he or she has been apprised of the Company's Misconduct Reporting Procedure (see link within Business Principles). In the event that a complaint is warranted under the Misconduct Reporting Procedure, the Employee may call 1-866-250-6706 or visit www.speakupfeedback.eu/web/integrityatrandstad/us. In connection with either reporting mechanism, the access code is 42115. The Employee acknowledges that by this Agreement, the Employee has been notified that if he or she has any questions or concerns about his or her employment, the Company's policies or principles, or if the Employee has a complaint of any kind concerning his or her employment, that the Employee has the right and is encouraged to notify his or her Human Resources (HR) Business Partner.

10. **Miscellaneous**.

(a) The Employee acknowledges that his or her obligations under this Agreement are personal and that he or she may not assign any of his or her rights or delegate any of his or her duties or obligations under this Agreement. The Company may assign, without notice to the Employee, its rights and obligations under this Agreement, which shall inure to the benefit of, and shall be binding upon, the successors and assigns of the Company.

(b) If, after executing this Agreement, Employee: (i) is promoted to, assigned to or otherwise assumes one or more positions or functions other than or in addition to Employee's position or functions at the time Employee signed this Agreement, regardless of title, or (ii) is transferred or assigned to or otherwise works for any affiliate, subsidiary or other division or business unit of the Company, the terms of this Agreement shall continue to apply with full force and effect.

(c) The Employee acknowledges that the covenants contained in Sections 3 and 4 are reasonable and essential to protect the Company's Confidential Information, Trade Secrets, goodwill and its relationships with customers, Placement Candidates, Talent and associate (internal) employees, and that such covenants will not impair the Employee's ability to procure subsequent comparable employment.

(d) This Agreement may be executed in two or more counterparts, all of which together shall constitute a single agreement. A copy, .pdf/.jpg or facsimile shall be treated as an original Agreement for all purposes.

(e) Each of the covenants and provisions contained in this Agreement is severable and shall be enforceable independently of every other provision. In the event that any provision of this Agreement shall be held to be overly broad in any respect (including, without limitation as to scope, geographic applicability, time period, activity or subject) so as to be unenforceable as written and agreed to by the parties, it is the parties' intention that such provision shall be construed by the appropriate court or arbitrator by limiting or reducing it so as to be enforceable to the fullest extent compatible with the then applicable law, and the parties hereby specifically request that any such court or arbitrator exercise its discretion consistent with this intention.

(f) If Employee previously executed other written agreements with the Company relating to the subject matter of this Agreement, and/or if Employee later enters into other written agreements that contain provisions similar to the provisions contained in this Agreement, all such provisions shall be interpreted to provide the Company with cumulative rights and remedies, and the benefits and protections provided to the Company under each such agreement shall be given full force and effect. No prior or contemporaneous agreement, whether written or oral, shall be construed to change, amend, alter, repeal or invalidate this Agreement.

(g) A waiver by one party of a breach of this Agreement by the other party shall not be construed as a waiver of any subsequent or similar breach.

(h) This Agreement may be amended or terminated only by written agreement of both parties.

(i) Nothing in this Agreement shall relieve Employee of any duties or obligations Employee has to the Company under statutory or common law, which include but are not limited to: fiduciary duties, the duty of loyalty, the duty not to tortiously interfere with business relationships, the duty not to engage in unfair competition, and the duty not to misappropriate any Trade Secrets.

(j) Employee acknowledges that the Company provided Employee with a copy of this Agreement prior to or concurrent with making an offer of employment, or an offer of change in Employee's job classification, or implementation of a merit increase or other change in the Employee's compensation and benefits, and informed Employee, prior to Employee's execution of this Agreement, that this Agreement is required as a condition of employment with the Company.

11. **Agreement Comprehension and Legal Advice**. The Employee represents that he or she has read this Agreement completely and carefully and that he or she understands the contents and effect of this Agreement. Employee further represents that he or she has had the opportunity to consult with an attorney before voluntarily signing below and has either consulted with an attorney or waived the opportunity to do so.

12. **Governing Law and Selection of Forum**. This Agreement and the rights and obligations of the parties hereunder shall be construed and enforced in accordance with, and all questions concerning the construction, validity, interpretation and performance of this Agreement shall be governed by, the laws of the state of Georgia, without giving effect to provisions thereof regarding conflict of laws. Any claims arising out of or related to the covenants in Sections 3, 4, 5, and 6 of this Agreement, all claims arising under applicable law governing trade secrets, and all claims for emergency injunctive relief, must be litigated exclusively in the Superior or State Courts of Cobb County, Georgia, provided, however, that any such claim or cause of action may be brought in, or removed to, the United States District Court for the Northern District of Georgia, Atlanta Division, to the extent that such court would have jurisdiction over the subject matter of such action. The Employee and the Company waive any objection

based on personal jurisdiction and forum non conveniens and waive any objection to venue of any action instituted hereunder to the extent that an action is brought in the courts identified above. Each party agrees that a final judgment in any such action shall be conclusive and may be enforced in any other jurisdiction in any manner provided by law.

**IN WITNESS WHEREOF,** the parties have signed this agreement as of this 23 day of June, 2015.

**Employee**

(Signature)

Jeff Luma

(Print Name)

**Randstad Technologies, LP:**

By:

Angela Harris SVP NO

(Print Name and Title)